

In The

Court of Appeals

Seventh District of Texas at Amarillo

No. 07-13-00441-CV

IN THE INTEREST OF D.J.B., A CHILD

On Appeal from the 320th District Court
Potter County, Texas
Trial Court No. 69,628-D, Honorable Don R. Emerson, Presiding

June 9, 2014

MEMORANDUM OPINION

Before QUINN, C. J., and CAMPBELL and HANCOCK, JJ.

Appellant S.B. appeals the termination of her parental rights to her child, D.J.B. Appellant contends the evidence was legally and factually insufficient to support the predicate grounds for termination and the finding that termination was in the best interest of the child. We will affirm.

Factual and Procedural Background

The trial court heard this termination proceeding along with that concerning two of appellant's other children. The court there terminated appellant's parental rights to those children, and we have today affirmed the trial court's judgment. *See In the Interest*

*of M.R., J. and M.R.,* No. 07-13-00440-CV, ___ Tex. App. LEXIS ___ (Tex. App.—Amarillo June 9, 2014) (mem. op.).

D.J.B. was residing with appellant in 2009 and was removed from her care when M.R., J. and M.R. also were removed. He was five when the children were removed from his mother's custody because of allegations of drug use and neglect, and ten at the time of the final hearing. Except for a short time when a "fictive kin placement" was attempted, unsuccessfully,[1] D.J.B. has remained in foster care since his removal in 2009. By the same agreed order in January 2011, the Texas Department of Family and Protective Services was made permanent managing conservator of all three children. In May 2013, the Department filed a petition to terminate the parent-child relationship between appellant and D.J.B.[2] The termination proceeding was resolved in a bench trial in October 2013.

## Analysis

### Standards of Review

Due process requires the application of the clear and convincing standard of proof in cases involving involuntary termination of parental rights. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see* TEX. FAM. CODE ANN. § 161.206(a) (West 2008).[3]

---

[1] For a brief period, the children were placed in a "fictive kinship placement." The children were removed from that placement and returned to foster care following allegations of abuse and neglect by that caregiver.

[2] The parental rights of D.J.B.'s biological father also were terminated in this proceeding. The father has not appealed.

[3] We have set out the standards of review and applicable law in more detail in our opinion in the companion case, *In the Interest of M.R.,J. and M.R.,* No. 07-13-00440-CV, ___ Tex. App. LEXIS ____ (Tex. App.—Amarillo June 9, 2014) (mem. op.).

The Texas Family Code permits a court to terminate the parent-child relationship if the petitioner establishes (1) one or more of the statutorily-enumerated acts or omissions and (2) that termination of the parent-child relationship is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001. Though evidence may be relevant to both elements, each element must be proved, and proof of one does not relieve the burden of proving the other. *In re C.H.,* 89 S.W.3d 17, 28 (Tex. 2002). While both a statutory ground and best interest of the child must be proved, only one statutory ground is required to terminate parental rights under section 161.001. *In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003). Therefore, we will affirm the trial court's order of termination if legally and factually sufficient evidence supports any one of the grounds found in the termination order, provided the record shows also that it was in the best interest of the child for the parent's rights to be terminated. *Id.*

In reviewing the legal sufficiency of the evidence supporting an order terminating parental rights, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction as to the truth of the allegations sought to be established. *In re J.F.C.,* 96 S.W.3d at 266. When reviewing the factual sufficiency of the evidence supporting a termination order, we consider the evidence as a whole in a neutral light, and determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department]'s allegations." *In re C.H.,* 89 S.W.3d at 25. In conducting this review, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.,* 96 S.W.3d at 266. "If, in light of the entire record, the disputed

3

evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

Discussion

The trial court found clear and convincing evidence that termination was in D.J.B.'s best interest and that appellant constructively abandoned the child. *See* TEX. FAM. CODE ANN. § 161.001(1)(N);[4] *In the Interest of D.N.,* 405 S.W.3d 863 (Tex. App.—Amarillo 2013, no pet.) (applying subsection N). A parent constructively abandons a child when (1) the child has been in the permanent or temporary managing conservatorship of the State or an authorized agency for not less than six months, (2) the State or the authorized agency has made reasonable efforts to return the child to the parent, (3) the parent has not regularly visited or maintained significant contact with the child, and (4) the parent has demonstrated an inability to provide the child with a safe environment. TEX. FAM. CODE ANN. § 161.001(1)(N); *In re M.R.J.M.,* 280 S.W.3d 494, 505 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g); *In re A.S.,* 261 S.W.3d 76, 88-89 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

The evidence supporting each of those elements with respect to D.J.B. is the same evidence, heard during the same hearing, as that we have detailed in our opinion in *In the Interest of M.R., J. and M.R.,* No. 07-13-00440-CV, ___ Tex. App. LEXIS ___

---

[4] The trial court also found termination appropriate under section 161.001(1)(F) of the Family Code. Because we find the evidence in the record supports termination under section 161.001(1)(N), we do not address the sufficiency of the evidence to support termination under section 161.001(1)(F). See *In re A.V.,* 113 S.W.3d at 362 (only one statutory ground is required to terminate parental rights under section 161.001).

(Tex. App.—Amarillo June 9, 2014) (mem. op.). We see little or no difference in the application of the evidence to satisfaction of subsection N's requirements for termination of appellant's rights to D.J.B. and its application in his siblings' cases. We summarize the evidence here.

Like his siblings M.R., J. and M.R., except for the short period of the failed "fictive kinship" placement, D.J.B. has resided in foster homes in or near Amarillo since mid-2009. Appellant was incarcerated in a state jail from December 2009 through December 2010. After her release from state jail, appellant moved to Fort Worth where her mother and sisters lived. At the time of the final hearing, she was living with her father near St. Louis, Missouri, where she had lived since late 2012.

*Children in Permanent or Temporary Managing Conservatorship*

It is undisputed that the Department has been the child's permanent managing conservator since January 2011.

*Reasonable Efforts to Return Children to Parent*

The service plan outlining the steps appellant was to take to regain custody of D.J.B. was identical to that for the other two children. As in *In the Interest of M.R., J. and M.R.,* No. 07-13-00440-CV, ___ Tex. App. LEXIS ___ (Tex. App.—Amarillo June 9, 2014) (mem. op.), the trial court could have seen the Department's implementation of the service plan, and appellant's understanding of its requirements, as reasonable efforts by the Department to return D.J.B. to appellant. *See In re D.S.A.,* 113 S.W.3d 567, 570-72 (Tex. App.—Amarillo 2003, no pet.); *In re K.M.B.,* 91 S.W.3d 18, 25 (Tex.

App.—Fort Worth 2002, no pet.) (both holding reasonable efforts to reunite parent and child were made through the preparation and administration of service plans). Like the other plans, the service plan with respect to D.J.B. stated that the permanency goal was "family reunification," with a concurrent or alternative permanency goal of "relative adoption."

The conflicting evidence regarding appellant's satisfaction of the service plans' requirements as to M.R.,J. and M.R. applies equally to the case involving D.J.B. As in the companion case, appellant's testimony demonstrated her understanding that the route to the return of D.J.B. was through compliance with the service plans. Appellant acknowledged she did not initially "work the services" called for under the plans for the return of any of her children to her care. She also acknowledged that the month after she was released, she agreed to an order appointing the Department as permanent managing conservator of the children.[5]

Appellant satisfied some requirements of the plan during December 2010 but failed to follow through on a number of recommendations.[6] Also, she began using drugs again later in 2011, did not complete any services during that year, and "stopped returning phone calls" and failed to provide the Department with a current phone number after the January 2012 placement hearing. Her testimony, and that of the caseworker describing elements of the plans, supports the trial court's implicit finding

---

[5] *See* TEX. FAM. CODE ANN. § 263.404 (permitting final orders appointing the department managing conservator without termination of parental rights).

[6] Appellant testified she had another child born while she was in state jail. Appellant's parental rights to that child also were terminated. She agreed with her counsel's assessment of that termination: "And that's because you didn't work services and you didn't show up; is that right?"

that the handling of the plans constituted a reasonable effort on the part of the Department to return D.J.B. to appellant.

We note also the caseworker's testimony that each time appellant contacted the Department about visitation with her children under the terms of the 2011 order, the Department did its best to accommodate her requests.

*Lack of Regular Visits or Significant Contact with Child*

Like his two siblings, D.J.B. saw his mother only five times between the date of the January 2011 order to the date of the final hearing, a period of some 33 months. Appellant requested two other visits that were denied by the Department because of appellant's failure to provide a clean drug screen.[7] The case worker noted that "[e]very visit except for yesterday's visit has been the same day as a placement review hearing." Sporadic visits like these have been found sufficient to support a finding of lack of significant contact under section 161.001(1)(N). *See, e.g., In re N.R.T.,* 338 S.W.3d 667, 673-74 (Tex. App.—Amarillo 2011, no pet.); *In re H.R.*, 87 S.W.3d 691, 699 (Tex. App.—San Antonio 2002, no pet.). *See also In re J.J.O.,* 131 S.W.3d 618, 628-29 (Tex. App.—Fort Worth 2004, no pet.) (holding evidence sufficient to support finding that mother had not regularly visited or maintained significant contact with child when mother made only twelve visits during a nine-month period)*; In re P.R.*, 994 S.W.2d 411, 416 (Tex. App.—Fort Worth 1999, pet. dism'd w.o.j.) (finding evidence sufficient under

---

[7] Appellant argues the Department violated the 2011 order by denying her visits with her children for reasons not provided by that order. As we addressed it in *In the Interest of M.R., J. and M.R.,* No. 07-13-00440-CV, ___ Tex. App. LEXIS ____ (Tex. App.—Amarillo June 9, 2014) (mem. op.), this argument ignores the provision of the court's July 2012 placement review order that ordered appellant not be permitted to visit the children until she had a negative drug screen. In any case, the additional visits would not have elevated her contacts with D.J.B. to a regular or significant level.

section161.001(1)(N) where mother sporadically visited child, used drugs, and failed to comply with service plan).

*Parent Demonstrated Inability to Provide Child with Safe Environment*

The record supports a conclusion appellant demonstrated an inability to provide D.J.B. with a safe environment. Appellant has not provided care for D.J.B. since his 2009 removal. The case worker testified appellant never completed the services set forth in the service plans and has not "demonstrated over time that she can remain free from drug abuse and provide a safe and stable home environment for these children."

We again acknowledge appellant's testimony that following her 2012 move to Missouri, she obtained a job, moved into an eight-bedroom home with her father, began the process of getting her driver's license returned, made a plan to return to school, surrounded herself with people she thought would be supportive of her efforts, and assumed informal custody of her daughter, E.R.[8] As we concluded in the companion case, however, these admirable efforts do not negate the clear evidence of her long-standing inability to care for D.J.B.

Conclusion

Viewing the evidence in the light most favorable to the Department as the prevailing party, a rational trier of fact could have reasonably formed a firm belief or conviction appellant constructively abandoned D.J.B. Likewise, viewing the evidence as a whole in a neutral light, a rational trier of fact reasonably could have reached the

---

[8] Appellant had previously given permanent managing conservatorship of E.R. to the child's paternal grandmother.

same firm belief or conviction. The evidence is legally and factually sufficient to support the trial court's findings under section 161.001(1)(N). We overrule appellant's first two issues.

Best Interests

The trial court is given wide latitude in determining the best interest of a minor child; *Gillespie v. Gillespie,* 644 S.W.2d 449, 451 (Tex. 1982), and, while there is a strong presumption that keeping a child with a parent is in the child's best interest, it is also presumed that prompt and permanent placement of the child in a safe environment is in the child's best interest. *In re D.S.,* 333 S.W.3d 379, 383 (Tex. App.—Amarillo 2011, no pet.).

In conducting the best interest analysis, we evaluate "[t]he best interest of the child, not the parent." *Id.* at 384. We consider, among other evidence, the factors listed in *Holley v. Adams,* 544 S.W.2d 367, 372 (Tex. 1970). These considerations are not exhaustive nor is proof of each a condition precedent to termination of the parent-child relationship. *In re D.S.,* 333 S.W.3d at 383-84 (*citing In re C.H.,* 89 S.W.3d at 27). The evidence supporting the statutory grounds for termination may be used to support a finding that the best interest of the children warrants termination of the parent-child relationship; *id.* at 28; *In re P.E.W.,* 105 S.W.3d 771, 779 (Tex. App.—Amarillo 2003, no pet.), and a best interest analysis may also consider circumstantial evidence, subjective factors, and the totality of circumstances as well as the direct evidence. *In re D.S.,* 333 S.W.3d at 384. In addition, a parent's future conduct may be measured by his or her

past conduct in determining whether it is in the child's best interest to terminate parental rights. *Id.*

Discussion

As was true with regard to M.R., J. and M.R., the trial court could have seen the presented evidence as showing appellant has no significant parental relationship with D.J.B. The record strongly established appellant's failure to regularly visit him or maintain any significant contact with him, over a number of years.

D.J.B is currently in foster care, residing in a home different than his siblings. The Department has not identified a prospective adoptive placement for D.J.B. because it does not begin that process until termination is complete. D.J.B.'s foster family has not indicated a desire to adopt him but the caseworker testified it is "possible" to find an adoptive home for D.J.B. and his two siblings.

The record does show D.J.B. has expressed a desire to see his mother. But in 2013, D.J.B. told his counselor he wanted to be adopted and he "felt like he probably wouldn't go home with his mother."

D.J.B.'s counselor also gave testimony suggesting that the visits D.J.B. had with his mother had a negative effect on his behavior after the visits. The testimony was to the effect that, after such visits, D.J.B. was forgetful and absentminded, and that his teachers also reported a more difficult time "getting him to sit still and focus in class . . . ." The counselor also told the court that D.J.B. told him of his memory of his mother participating in intercourse in the presence of the child. D.J.B. related that

10

memory to the counselor after the child, in 2012, "had gotten himself in trouble for some inappropriate sexual behavior with another peer in the home . . . ."

Based on this evidence, and for the reasons more fully set forth in *In the Interest of M.R., J. and M.R.,* No. 07-13-00440-CV, ___ Tex. App. LEXIS ___ (Tex. App.—Amarillo June 9, 2014) (mem. op.), we find the trial court reasonably could have formed a firm belief or conviction that termination of appellant's parental rights and pursuit of the Department's plan to pursue adoptive placement was in D.J.B.'s best interests. The evidence contrary to that conclusion is not so significant as to preclude such a belief or conviction. Accordingly, we find the evidence legally and factually sufficient to support the trial court's best interest finding and overrule appellant's final issue.

## Conclusion

Having resolved each of appellant's issues against her, we affirm the judgment of the trial court.

James T. Campbell
Justice